## Pennington, et al. v. Cumberland Valley Land Co.

(Decided November 14, 1912.)

### Appeal from Harlan Circuit Court.

Land—Action to Recover—Deeds—Interest Conveyed—Evidence.—
The deed in controversy shows that appellants intended to convey to their brother and he intended to purchase all of their interest in the land which descended to them by their father, regardless of how or where it was located, and the appellee by mesne conveyance becoming the owner of the whole survey, the action of appellants to recover a certain undivided interest was properly dismissed.

W. F. HALL for appellants.

H. C. CLAY for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This appeal involves the title to a two-ninths undivided interest in a tract of land described in the petition as containing about 350 acres. Appellants claim to own it by descent from their father, James Turner, Sr. Appellee claims that appellants sold and conveyed their interest in their father's estate to their brother and that it, by mesne conveyances, has become the owner of the whole survey of land. There was much testimony taken in the case, but the only question necessary for us to consider is whether the conveyances by appellants to their brother passed to him their entire two-ninths interest in their father's land, or whether these deeds failed to convey their interests in the land in contest.

It appears that James Turner, Sr., took out a patent for 1,800 acres of land, and that in describing the land, the patent only called for stake corners. Both parties agree that the land was not run out by a surveyor; that the courses, distances and stake corners called for

in the deed were found by protraction. No actual sur-, vey was made of the land until a few years since, and no person knew the location of the lines and corners until that time, but it appears that everyone was under, the impression that the north line was on or near the top of Big Black Mountain. When the calls of the patent were actually run, however, it was found that the north line extended beyond the crest of the mountain far enough to include about 350 acres of land north of the, crest of the mountain and this is the land in which ap-, pellants are claiming two-ninths interest. Appellants, Mrs. Hall, a daughter of James Turner, Sr., C. E. Pen-. nington and E. A. Stooksberry, children of another daughter of James Turner, Sr., claim that the deeds, made by Mrs. Hall, who was then Mrs. Wynn, and their mother did not convey the land north of the crest of the mountain. The waters north of this mountain drain into Poor Fork, and the patent of James Turner, Sr., called for the land lying on the waters of Clover Fork of Cumberland River, which is south of the mountain, but the survey shows that only four-fifths of it is on that side and that the other fifth is north of the mountain on the waters of Poor Fork. Lavina M. Pennington, the mother of two of appellants, and Sarah Wynn, now Hall, conveyed, by separate deeds, their one-ninth interests in the 1,800 acre tract to their brother, William Turner, Jr. We copy only one of the deeds as they are similar.

"This indenture made and entered into this 11th day of May, 1863, between William M. Pennington and his wife, Lavina M. Pennington, late Lavina Turner of the county of Lee and State of Va., of the one part, and William Turner, Jr., of the County of Harlan and State of Kentucky of the other part,

"Witnesseth: That the said William M. Pennington and his wife Lavina M. Pennington, late Lavina Turner, for and in consideration of the sum of Eight Hundred Dollars, to them in hand paid, by the said William Turner, Jr., the receipt whereof is hereby acknowledged, hath this day granted, bargained and sold to said Turner all of the interest that we the said Penningtons has in the old tract of land belonging to the estate of James Turner, deceased. Lying in the County of Harlan and State of Kentucky, on the Clover Fork, waters of Cum-. berland River, that is to say one-ninth part of said tract of land which is undivided, and we the said Wm. M. Pen-

nington and Lavina Pennington, late Lavina Turner, doth bind ourselves, our heirs, &c., to forever warrant and defend the title to all of our interest in said undivided tract of land, the said Wm. Turner, Jr., his heirs and assigns, &c., forever, also bind ourselves to forever warrant and defend the title to one-ninth part of said undivided tract of land from the claims of all other persons who may claim said ninth part of said undivided tract of land or any part thereof in any manner whatsoever.

"In testimony whereof, the said William M. Pennington and Lavina M. Pennington, late Lavina Turner, hath hereunto set their hands and seals the day and date first written.

"It is to be understood that this deed includes one-ninth part of the old Bailey tract of land which belonged to said Jas. Turner, Sr., at the time he deceased."

It is certain that the expression, "old tract of land belonging to James Turner, Sr.," used in both of the deeds, referred to the 1,800 acre tract. There is a statement in appellants' brief that the "old place" referred to the Bailey tract of 400 acres which, or a part of which, Turner owned at the date of his death, as he had owned it for a longer time than he had the 1,800 acre tract, but this question is set at rest by the deed itself when it, after referring to the old tract of land owned by her father, expressly states that it is also to include a one-ninth interest she owned in the Bailey land. The deeds in express terms, convey all of appellants' interest in the "old tract of land," and names their interests as one-ninth each of the undivided whole which they bound themselves to forever warrant and defend. As stated, neither appellants nor their brother who purchased their interests, knew at the time the deeds were made just where the lines and corners of the survey of land were located; they did not know that the north line was beyond the crest of the mountain. It is evident, however, that they intended to sell and their brother intended to purchase from them, all their interest in the 1,800 acre tract of land.

Appellants cite the case of Smith v. Cornett, 26 Ky. L. R., 265, and claim that it settles this case in their favor. The facts of that case show that John H. Smith died in 1862 the owner of two tracts of land, one of which contained 800 acres lying on the waters of Poor Fork,

which was improved and known as the "home farm." The other contained about 1,000 acres and was on the waters of Clover Fork and was wild and unimproved. These two tracts were divided by the crest of Big Black Mountain and also separated by a survey of 2,800 acres of land known as the "John Lewis survey." Soon after the death of Smith, Cornett, one of his sons-in-law, began to purchase the interests of the other children in the real and personal estate of their deceased father. One of the heirs who conveyed his interest to Cornett described his interest as follows: All the interest in the land owned by John Smith, deceased, situated on the Poor Fork of Cumberland River adjoining the land of John Lewis. In the other deeds to Cornett the land was referred to as lying and being in the county of Harlan on Poor Fork of Cumberland River, and bounded with the line of said tract of land. In that case neither the vendors nor the vendee knew that John Smith died the owner of unimproved land on Clover Fork. The language of the deeds in that case shows that the vendors only sold their interests in the eight hundred acre tract of land on Poor Fork. The facts of that case and of those of the case at bar are different. In the case at bar appellants sold their one-ninth interests in the 1,800 acre tract of land regardless of how and where it was located.

For these reasons, we are of the opinion that the lower court was correct in dismissing appellants' petition; therefore the judgment is affirmed.