## Ison, Sr., et al. v. Wolf, et al.

(Decided May 8, 1913.)

### Appeal from Letcher Circuit Court.

Deeds—Construction of Deeds Conveying an Undivided Interest in Land Received From Ancestor.—Where heirs, after reaching maturity, seek to recover a tract of land owned by their father and devised to them, upon the ground that they were ignorant that their father owned it when they made the deed conveying to the grantee "all their interest in their father's estate," the deed will control, in the absence of fraud or mistake or the most convincing evidence that the heirs were ignorant of the extent and boundary of the estate owned by their father.

WOOTTEN & MORGAN and O'REAR & WILLIAMS for appellants.

DISHMAN, TINSLEY & DISHMAN, D. D. FIELDS and J. MORGAN CHINN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1859 Isaac D. Stamper and wife sold and conveyed to Elijah Ison a tract of land in Letcher County, located on the Rock House Fork of the Kentucky River, and containing two hundred acres, more or less. The deed describes the land generally and not by metes and bounds or courses and distances.

In 1867 Stamper and wife conveyed to Ison another tract of land situated on the Rock House Fork of the Kentucky River, containing five hundred acres, more or less. The deed describes the land generally, but not by metes or bounds or courses or distances. In January, 1878, Elijah Ison made a will devising all of his land to his six sons, Gideon, Jonah, James, Stephen, Elijah, and Elisha, and sometime after this died. The record does not give the date of his death.

In 1887 Stephen, Elijah and Elisha conveyed to their brothers, Jonah and James, "A tract of land lying on Rock House Creek in Letcher County, being an undivided interest in the farm owned by our father, Elijah Ison, (deceased), and known as the I. D. Stamper place, our interest being one-half of said farm." This deed was recorded in 1889.

In 1884 Gideon and his wife conveyed to Jonah and James a body of land described as follows: "Their in-

terest in the farm known as the Elijah Ison farm on Rock House Creek, a tributary of the North Fork of the Kentucky River, in the county of Letcher and the State of Kentucky.'' This deed was recorded in 1885.

By these two deeds Jonah and James became owners of all the land owned by their father and conveyed to Jefferson Ison a body of land described as ''all our interest in our father's, Elijah Ison's, deceased, estate in one tract or parcel of land situated, lying and being in the county of Letcher, State of Kentucky, on the waters of Rock House, a tributary of the North Fork of the Kentucky River, bounded as follows: beginning at the mouth of a small drain on High Hill Branch of Rock House Creek on west side of said branch at upper end of the field known as Rye Field; thence with the meanders of said drain to the top of the hill between High's Mill Branch and Orchard Hollow; thence up the point to the top of the mountain between High's Mill 'Branch and Garner Branch; thence with the top of the hill round to the Wolf Pen Gap; thence with the conditional line between William R. Stamper and I. D. Stamper to the top of the mountain between Rock House and High's Mill Branch; thence down said ridge to opposite the beginning; thence a straight line to the beginning.'' This deed was recorded in 1895 and Jonah and James do not controvert that it conveyed all the land their father had purchased from Stamper in 1859 and 1867.

In 1901 Jefferson Ison conveyed to Grant Ison the land conveyed to him by Jonah and James. This deed describes the land conveyed by metes and bounds, courses and distances, and recites that the tract contained 430 acres. This deed was recorded in 1902. In 1906 Grant Ison conveyed this land to George and J. H. Wolf, and this deed was recorded in 1906.

In 1909 Elijah Ison, one of the sons of Elijah Ison, deceased, and Elisha Ison, a son of Gideon Ison, who died after the death of his father, Elijah Ison, and Stephen Ison, a son of Elisha Ison, who died subsequent to the death of his father, Elijah Ison, and Melissa Draughn and Elisha Ison, children of Stephen Ison, who died subsequent to the death of his father, Elijah Ison, brought this suit against George and J. H. Wolf, to recover a one-sixth interest each in a part of the tract of land conveyed by Stamper to Elijah Ison in 1867. They averred that the plaintiff, Elijah Ison, and the decedents, Stephen, Gideon and Elisha, conveyed their interest as before

stated to Jonah and James in the tract of land conveyed by Stamper to Elijah Ison in 1859, but that they did not convey their interest in all of the tract conveyed by Stamper to Elijah Ison in 1867.

They further set out that they did not know at the time of the conveyance of their interest to Jonah and James that their father, Elijah Ison, owned at the time of his death, or that there was devised to them by his will, that part of the tract of land conveyed by Stamper in 1867, which they claimed, and hence they did not either sell or convey to Jonah and James, the remote vendors of the Wolfs, their interest in that part of the tract of land conveyed by Stamper in 1867 claimed by them. They further set out that the tract conveyed by Stamper in 1859 was separate and distinct from the tract conveyed by him in 1867, and they asked that the part of the land in which they claimed an interest be divided and that they be allotted four-sixths thereof and the Wolfs two-sixths.

In an amended petition they averred that the statement in the original petition, that the tracts of land conveyed by Stamper to Elijah Ison in 1859 and 1867 were separate and distinct bodies, was a mistake and that these two deeds conveyed land lying in one body. They further set out in the amended petition that Elijah Ison lived and died on the tract of land conveyed to him by Stamper in 1867 and identified in the record as tract number two.

The Wolfs, for answer to this suit, set out their chain of title, and averred that the plaintiff, Elijah Ison, and the ancestor of the other plaintiffs, conveyed all their interest in the land owned by their father at his death to James and Jonah, from whom they derived title as above set out. They further pleaded and relied on adverse holding and the statute of limitation. On hearing the case the lower court decided in favor of the Wolfs, and the plaintiffs below prosecute this appeal.

It seems to be conceded by both parties that Elijah Ison resided until his death on the land conveyed to him by Stamper in 1867, and that Stamper continued to reside on this tract of land until his death, which did not occur until sometime after the death of Elijah Ison, although the record does not disclose why Ison permitted Stamper to occupy this tract of land.

The evidence also shows virtually without contradiction that after the death of Stamper his widow and his

son-in-law, Jefferson Ison, continued to reside on and occupy the land that he had resided on and occupied from 1867 until his death; and in 1894, when Jefferson Ison obtained the deed from Jonah and James, he was yet in the occupancy of this land. It further appears that Jefferson, who had been living on this land for many years, claiming to own it, after the death of I. D. Stamper, learned in 1894 that Stamper had conveyed the land in 1867 to Ison, and thereupon he purchased, as before stated, the interest of Jonah and James, thus uniting in himself the legal title and the adverse holding to this tract of land, and it is this particular tract of land that the appellants claim was not embraced by the deeds mentioned.

The questions of limitation and adverse holding present very serious obstacles in the way of the appellants' assertion of ownership to this land, but passing these issues, we think the case may be disposed of under the evidence upon the single issue that the deeds made by Elijah and the others conveyed to Jonah and James all their right, title and interest in whatever land their father owned at his death, and this included the land now in controversy. Of course, if these deeds conveyed the interest of the parties in all of the land owned by their father at his death, the appellants have no standing in court. On the other hand, if these deeds only conveyed the interest of the grantors in a part of the land owned by their father, they would yet own and be entitled to the other land owned by him and not disposed of by them unless their claim should be barred by limitation or adverse possession.

The appellant, Elijah Ison, is the only material witness in his behalf. He testifies in substance that his father lived for many years and died on the land bought by him from Stamper in 1867 and known as tract number two, and that I. D. Stamper continued to live on a part of this land until his death, and that after his death his widow and his son-in-law, Jefferson Ison, continued in possession of it. He says that he did not learn of his father's ownership of the land in controversy, which is that part of tract number two on which Stamper lived and died, until within a short time before this suit was brought, and that he did not convey or intend to convey any interest he might have in this particular piece of land.

It is, however, true that he lived on and in the neighborhood of this land all of his life, and in 1887, when he conveyed his interest to Jonah and James, he was presumably over twenty-one years of age but he did not take any steps to recover this land until more than twenty, years after the execution of this deed, when he brought this suit. The record does not furnish a satisfactory explanation of his long delay in asserting ownership to this land, nor is his evidence convincing that he was ignorant at the time he made the deed, of his father's ownership of the land now claimed by him. All the land owned by his father was situated on Rock House Creek, which ran entirely through it, and it is quite improbable that the appellant, Elijah, should have been ignorant of the boundary of land owned by his father and have remained in ignorance of it for more than twenty years. We have not mentioned the circumstances surrounding Gideon Stephen and Elisha because there is no evidence that they did not know what land their father owned when they conveyed.

But passing these matters and getting back to the deeds made by the four children to Jonah and James, it will be noticed that Stephen, Elijah and Elisha conveyed their undivided interest in the land owned by their father, situated on Rock House Creek, and that Gideon conveyed all his interest in the land owned by his father, situated on Rock House Creek. There is no intimation in these deeds that any part of the interest the grantors had in the land of their father was reserved or excepted from the conveyances. The deeds in plain and unambiguous terms convey all the interest the grantors owned in the land of their father, and the only land he owned, so far as the record shows, was the two tracts conveyed to him by Stamper.

It is true these deeds did not describe the land conveyed by metes or bounds or give the number of acres, but the failure to do this does not at all affect the validity of the deeds, and, under the evidence, we think these deeds conveyed all the interest the grantors had in the two tracts conveyed to their father by Stamper, which include the land in controversy, and that they are estopped by the terms of these deeds from asserting that the deeds did not include their interest in all the land their father owned.

We do not mean to say that a state of case might not appear in which grantors would not be estopped from

showing that deeds conveying their interest in certain lands did not include lands of which they had no knowledge or information at the time the deeds were made. We can easily imagine a state of case in which it might clearly appear that a decedent owned land that his children, at the time of his death, or when they sold their interest in his estate, had no knowledge or information whatever of, and in such a case facts might be developed that would allow them to recover their interest in land of which they were ignorant of the ownership. Smith v. Cornett, 26 Ky. L. R., 265.

But the appellants here have not shown themselves entitled to be relieved from the effects of deeds purporting to convey all the interest the grantors had in the estate of their father. There is no claim of fraud or mistake in the execution of the deeds. It is not shown that the grantees knew or had any reason to suspect that the deeds did not convey all the interest of the grantors in all the land owned by their father, or that the grantees knew when the deeds were made that the grantors did not know that their father owned the land now in dispute or that they did not have this land in contemplation in making the sale. If under the evidence in this record, the appellants could succeed in limiting the terms of the deeds so as to defeat the express intention, recorded title papers would furnish little or no security to purchasers depending on them. Pennington v. Cumberland Valley Land Co., 150 Ky., 576.

The judgment is affirmed.